# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MAURICE S. JORDAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1673 |
| | § | |
| SONY BMG MUSIC | § | |
| ENTERTAINMENT, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER
## ON SONY SUMMARY JUDGMENT MOTION

This case arises from Plaintiff Maurice S. Jordan's (p/k/a "Kenoe") ("Jordan")

involvement in the creation of the songs *8 Rulez*, *Haters Still Mad*, and *We Ain't*

*Scared* (collectively, the "Songs"). The Songs appeared on a 2002 album of

Defendant Wesley Eric Weston (p/k/a "Lil' Flip") ("Weston"), *Undaground Legend*,

and his 2003 album, *Lil' Flip and Sucka Free Present: 7-1-3 and the Undaground*

*Legend* ("*7-1-3 Album*"). Pending before the Court is a Motion for Summary

Judgment [Doc. # 72], filed by Defendant Sony BMG Music Entertainment, Inc.

("Sony"). Upon review of the parties' submissions,[1] all pertinent matters of record,

---

[1] Jordan has responded [Doc. # 84], Sony has replied [Doc. # 89], and Jordan has filed
a Response to Objections Filed by Defendant Sony BMG and Motion for Leave to
Respond to New Issues [Doc. # 92] ("Plaintiff's Surreply"). Additionally, Sony has
filed Objections to Plaintiff's Summary Judgment Evidence [Doc. # 88], and Jordan
has responded [Doc. # 92]. Finally, in response to a request by the Court, Jordan has
filed a Response to the Court's Inquiry Regarding *Howard v. Sony BMG* Matter [Doc.

and applicable legal authorities, the Court concludes that Sony's motion should be **granted**.

## I.     FACTUAL BACKGROUND

Jordan composes music and, on occasion, works as a music producer.  In July 2000, Jordan composed works that became the underlying melodies for the Songs. On January 10, 2002, Weston entered into an Agreement with Defendant Suckafree Records, Inc. ("SRI") to provide recordings to SRI (the "Artist Agreement").  On the same date, SRI entered into a Distribution Agreement with Sony for the recordings that would be provided by Weston to SRI under the Artist Agreement (referred to hereafter as the "Sony/SRI Distribution Agreement").[2]   Under the Sony/SRI Distribution Agreement, Sony and SRI agreed to specific royalties[3] and agreed that Sony (through its record label entity "Loud Records, LLC") would compute royalties due to SRI twice a year, as of each June 30th and December 31st.[4]  The parties also

---

# 103], and Sony has responded [Doc. # 109].

Sony has also filed a Motion to Strike Plaintiff's Expert Testimony [Doc. # 99]. Because the Court concludes that Sony's Motion for Summary Judgment should be granted, Sony's Motion to Strike Plaintiff's Expert Testimony [Doc. # 99] is **DENIED AS MOOT**.

[2]     Plaintiff's Response [Doc. # 84], Exh. 2: "Distribution Agreement" ("Sony/SRI Distribution Agreement").

[3]     *Id.* ¶ 9.

[4]     *Id.* ¶ 12.

agreed to licenses and formulas for "mechanical royalties."[5]  On January 10, 2002, Sony and SRI also entered into a Distribution Agency Agreement for albums that Weston had released prior to establishing a relationship with Sony (referred to hereafter as the "Prior Albums Agreement").[6]  Four months later, on May 27, 2002, Jordan entered into a "Production Services Agreement" with SRI to produce three recordings for Weston.[7]  This agreement provided that if Weston used one or more of the recordings on his album, Jordan would be entitled to producers' royalties equal to "three percent (3%) per Recording [of] the sale of any such records embodying the Recordings."[8]  The agreement also provided that Weston would pay Jordan a $3,000 advance against any royalties due to Jordan.

The Songs were later released in August 2002 as part of an album, *Undaground Legend*, recorded by Weston, performing under the name "Lil' Flip."  This album was the first album released under the Sony/SRI Distribution Agreement.  The song *Haters Still Mad* was also included on a bonus CD distributed with certain versions of the *Undaground Legend* album.  In September 2002, Sony, through Loud Records, LLC,

---

[5]     *Id.* ¶ 13.

[6]     Plaintiff's Response [Doc. # 84], Exh. 1: "Distribution Agency Agreement" ("Prior Albums Agreement").

[7]     *See* Defendant's Motion for Summary Judgment [Doc. # 72], Exh. A: "Production Services Agreement" ("Production Services Agreement").

[8]     *Id.*

registered the sound recordings contained on the *Undaground Legend* album with the United States Copyright Office ("Copyright Office").  In March 2003, Defendants released, the *7-1-3 Album*, which contained versions of the Songs.  In May 2003, Sony registered the sound recordings contained on the *7-1-3 Album* with the Copyright Office.

Between September 2003 and February 2006, Jordan repeatedly contacted Sony requesting royalty payments for his services under the Production Service Agreement with SRI.  When no payments were forthcoming, Jordan filed this action on May 16, 2006.  On January 18, 2008, Jordan amended his Original Complaint to include a claim for copyright infringement.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).   "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III.   ANALYSIS

### A.   Express and Implied Contract Claims

Jordan alleges that Sony was contractually obligated to compensate him for production and use of the Songs, and that Sony is liable for breach of contract for failing to do so.  On May 27, 2002, Jordan entered into the Production Services Agreement with SRI to produce three recordings for Weston.  Sony was not a party to this agreement and Jordan does not argue to the contrary.  Rather, Jordan advances several other theories of Sony's contractual liability.  First, Jordan alleges that Sony was an agent of SRI under the Prior Albums Agreement, and that as an agent it was obligated to make the payments SRI owed to Jordan under the Production Services Agreement.  Second, Jordan alleges that he was an intended third-party beneficiary of a "Payment Authorization Contract" between Sony and SRI, and that Sony

breached this contract by failing to pay Jordan the money owed to him under the Production Services Agreement.  Finally, Jordan alleges that Sony is in breach of an "implied contract arising from its words and deeds with Mr. Jordan."[9]

The Court's jurisdiction in this case is based on diversity of citizenship, and therefore, the Court applies state law rules of contract construction.  *See Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  With respect to Jordan's express contract claims, the relevant contracts all contain valid choice of law clauses designating the laws of the State of New York.  "Texas law gives effect to choice of law clauses regarding construction of a contract."  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002)).  However, because the parties  have chosen to brief their arguments solely with reference to Texas contract law standards and have not identified any distinctions between New York and Texas law, the Court will apply the law of the forum state, Texas.  *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and [the Court is to] simply apply the law of the forum state."

---

[9]      Plaintiff's Response [Doc. # 84], at 17.

(quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2000))).

Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Bridgmon v. Array Systems Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)); *Frank's Int'l, Inc. v. Smith Int'l, Inc.*, 249 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  To establish the existence of a valid contract plaintiff must demonstrate that there was: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Roman v. Roman*, 193 S.W.3d 40, 50 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

### 1.    Agency Theory

Jordan alleges that the Prior Albums Agreement between Sony and SRI[10]

establishes that Sony was an "agent" of SRI responsible for making royalty payments

due to Jordan under the Production Services Agreement.  Jordan's agency argument

flies in the face of the language in ¶ 19 of the Prior Albums Agreement, which sets

forth Sony's relationship to SRI.  Paragraph 19 states that "Sony is Owner's [SRI's]

agent for purposes of the distribution described in this [Prior Albums Agreement].  In

all other respects Sony is an independent contractor."[11]  Paragraph 4A of the Prior

Albums Agreement states that Sony will "use reasonable efforts to obtain from such

---

[10]    Prior Albums Agreement [Doc. # 84, Exh. 1].  It is noted as a threshold matter that Jordan only raised this agency theory for the first time in his Response [Doc. # 84] to Sony's Motion for Summary Judgment.  By way of explanation for this delay, Jordan asserts that Sony did not include the Prior Albums Agreement in discovery and that Jordan only became aware of the agreement on July 9, 2008 through a SRI pleading in a related action.  Sony maintains that the document is inapplicable on its face to the present dispute but does not deny that the document never was produced in this lawsuit.  Sony has squarely addressed this agency theory in its Reply Brief Supporting Motion for Summary Judgment [Doc. # 89].  Jordan has fully responded to Sony's arguments.  Plaintiff's Surreply [Doc. # 92].  Because the parties have briefed this agency theory, the Court will address the merits.

[11]    Prior Albums Agreement [Doc. # 84, Exh. 1], ¶ 19(c).  Sony argues that the Prior Albums Agreement is an unsigned draft and as such cannot impose obligations on Sony.  However, the Sony/SRI Distribution Agreement states that, while the Prior Albums Agreement is an "Initial Draft,""[SRI] and Sony hereby indicate [their] agreement that the Initial Draft, as supplemented by this Article A [in the Sony/SRI Distribution Agreement], shall constitute a binding and enforceable agreement between [SRI] and Sony, pursuant to its terms."  Sony/SRI Distribution Agreement [Doc. # 84, Exh. 2], ¶ A.03.  Both Sony and SRI have signed the Sony/SRI Distribution Agreement.  Therefore, the terms of the Prior Albums Agreement are binding on the parties.

music publishers and/or copyright proprietors, on Owner's [SRI's] behalf, licenses for Sony's benefit to reproduce such musical compositions on Records for distribution hereunder . . . and make any payments to such music publishers and/or copyright proprietors as are required pursuant to such licenses during the Term."[12]  From these two contractual provisions, Jordan extrapolates an agency obligation on the part of Sony to pay him for his work on the *Undaground Legend* album and the *7-1-3 Album.* Jordan's reliance on the Prior Albums Agreement is misplaced.  By its explicit terms, the Prior Albums Agreement applies only to "Owner's Records," which are defined in the agreement as albums entitled *The Leprechaun* and *Hustalz Stack'in Endz.*[13] These albums were recorded by Weston prior to SRI entering into agreements with Sony and neither album contains any work by Jordan.[14]  The Prior Albums Agreement *per se* establishes no rights for Jordan.[15]

Plaintiff seems alternatively to argue that the Prior Albums Agreement was incorporated into the Sony/SRI Distribution Agreement in such a way that an agency relationship established in the Prior Albums Agreement extended and applied to albums created during the term of the Sony/SRI Distribution Agreement, including the

---

[12]    Prior Albums Agreement [Doc. # 84, Exh. 1], ¶ 4A.

[13]    *Id.* ¶ 2(a)(ii).

[14]    Jordan does not contend that his compositions were included on these albums.

[15]    The Court does not reach the issue of whether Jordan was entitled to any royalties from SRI.

*Undaground Legend* album and the *7-1-3 Album*.  This argument is unfounded.  While

the terms of the Sony/SRI Distribution Agreement do provide that the Sony/SRI

Distribution Agreement together with the Prior Albums Agreement constitute a "P&D

Agreement" between SRI and Sony for purposes of production and distribution of

Weston's albums,[16] the unambiguous terms of each the Prior Albums Agreement and

the Sony/SRI Distribution Agreement establish they are largely separate agreements

governing separate aspects of the SRI/Sony relationship.

"When a contract is not ambiguous, the construction of the written instrument

is a question of law for the court."  *MCI Telecomm. Corp. v. Texas Utils. Elec. Co.*,

995 S.W.2d 647, 650 (Tex. 1999).  The Sony/SRI Distribution Agreement is not

ambiguous.  The Sony/SRI Distribution Agreement only incorporates the Prior

Albums Agreement to establish Sony's royalty obligations on the previously

completed albums, *The Leprechaun* and *Hustalz Stack'in Endz*.  Nothing in the Prior

Albums Agreement imposes on Sony royalty obligations for albums created during

the term of the Sony/SRI Distribution Agreement, including *Undaground Legend* and

*7-1-3 Album*.  Further, ¶ 3.01(a) of the Sony/SRI Distribution Agreement refers to

---

[16]      Sony/SRI Distribution Agreement [Doc. # 84, Exh. 2], ¶ A.01.

albums created during the term of that agreement, and expressly provides that SRI "will be solely responsible for engaging and paying [producers]."[17]

Jordan has failed to raise a genuine fact question that would establish an agency relationship under the Prior Albums Agreement obligating Sony to make payments for the Songs in issue to Jordan under the Production Services Agreement. Sony is entitled to summary judgment on this theory of relief.

### 2.    Third-Party Beneficiary Theory

Jordan contends that he was a third-party beneficiary under what he terms the "Payment Authorization Contract"[18] between Sony and SRI, and therefore that Sony is obligated to make royalty payments to him. In substance the so-called "Payment Authorization Contract" is a letter from SRI to Sony that notified Sony that SRI had engaged the production services of Jordan for the Songs on the *Undaground Legend* album. The letter expressly acknowledges that the Sony/SRI Distribution Agreement "requires us [SRI] to pay for the services of the Producers."[19] The letter does "request

---

[17]    *Id.* ¶ 3.01(a). The distinctions and separateness of these agreements also is evidenced by the different royalty formulas applicable to the two groups of albums. *See id.* ¶ 9; Prior Albums Agreement [Doc. # 84, Exh. 1], ¶ 4A.

[18]    Plaintiff's Response [Doc. # 84], Exh. 7: "Payment Authorization Letter."

[19]    *Id.* ¶ 2.

and irrevocably authorize [Sony] to make payments to [Jordan] on [SRI's] behalf."[20]

However, ¶ 3 of the letter expressly limits Sony's duties and liabilities:

> [Sony's] compliance with this authorization will constitute an accommodation to [SRI] alone; [SRI] and [Jordan] are not beneficiaries of it.  All payments under this authorization will constitute payment to [SRI] and you will have no liability by reason of any erroneous payment or failure to comply with this authorization.[21]

The letter does not as a matter of law support Jordan's third-party beneficiary claim.  Sony did not sign the letter.  The letter, at best is evidence that Sony and SRI agreed that Sony would accommodate SRI by paying to Jordan directly sums Sony owed to SRI—to the extent SRI owed portions to Jordan.

Even to the extent the unsigned letter constitutes a valid contract between Sony and SRI, Jordan's third-party beneficiary claim fails.  A plaintiff generally may not enforce a contract to which he is not a party.  *Stine v. Steward*, 80 S.W.3d 586, 589 (Tex. 2002); *Rodriguez v. U.S. Security Assocs., Inc.*, 162 S.W.3d 868, 876 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  A third party may recover "only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit."  *Stine*, 80 S.W.3d at 589.  A court "will not create a third-party beneficiary contract by implication," and therefore, an agreement must "clearly and fully express an intent to

---

[20]     *Id.*

[21]     *Id.* ¶ 3.

confer a direct benefit to the third party." *Id* (citing *MCI Telecomms.*, 995 S.W.2d at 651). Rather than expressing an intent to confer a direct benefit to Jordan, the letter explicitly precludes any such third-party beneficiary status for Jordan: "[Sony's] compliance with this authorization will constitute an accommodation to [SRI] alone; [SRI] and [Jordan] *are not beneficiaries* of it."[22] *See MCI Telecomms.*, 995 S.W.2d at 651 ("In light of the clear language in the contract that the agreement not be construed as being for the benefit of any nonsignatory, we conclude that TU is not a third-party beneficiary."). Jordan has not raised a genuine fact issue that Sony and SRI intended to secure him a benefit or that they entered into the contract directly for his benefit. Sony is entitled to summary judgment on this theory of relief.[23]

### 3.   Implied Contract Theory

Jordan also argues that Sony breached an implied contract it had with Jordan directly to make royalty payments owed under the Production Services Agreement. Jordan contends that Sony's payment to Jordan of a $3,000 advance royalty[24] and Sony's alleged subsequent assurances in emails and similar communications that it

---

[22]   *Id.* (emphasis added)

[23]   Claims by Jordan for unpaid royalties must be asserted against SRIT, the party with which Jordan contracted to receive royalties. *See* Production Services Agreement [Doc. # 72, Exh. A].

[24]   This royalty payment refers to the $3,000 advance payment owed to Jordan by SRI pursuant to the Production Services Agreement. The parties do not dispute that Jordan received this $3,000.

would pay remaining royalties to Jordan established an implied contract between Sony and Jordan, which implied contract allegedly provides that Jordan definitively is entitled to royalties.  The evidence of record does not support this argument.

Existence of a contract can be implied from parties' actions that indicate a mutual intent to be bound to their respective obligations.  *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)).  However, "a meeting of the minds is an essential element of an implied-in-fact contract."  *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008).

Jordan has failed to raise a genuine fact question that Sony agreed to pay Jordan any royalties independent of what Sony owed SRI.[25]  After the release of the *Undaground Legend* album, Jordan's representatives repeatedly inquired of Sony about the status of royalty payments they claimed were due to Jordan.  Jordan characterizes Sony's responses to these inquiries as "representations that Sony BMG would recognize [Jordan's] 'unchallenged' 50% ownership interests to [the Songs]"

---

[25]    The Court does not reach the issue of whether Sony's conclusion that Jordan's royalty share was reduced to a zero rate under the applicable contracts, including the Artist Agreement and the Sony/SRI Distribution Agreement, was correct.

and that Sony thus owed Jordan royalties that had not been paid.[26]  An examination of Sony's actual responses to Jordan's representatives' inquiries clearly belies this assertion.  Sony did not promise to pay Jordan any specific royalty directly or independently, or acknowledge any royalty was due to him.  Throughout the course of Sony's interaction with Jordan and his representatives, Sony consistently stated that before Sony could calculate the royalties, SRI needed to provide Sony with final publication splits for the album.[27]  The evidence without contradiction establishes that royalties from album sales had to be calculated in light of SRI's obligations to others as well as to Jordan.  Sony's correspondence and records reveal that Sony was missing certain necessary information regarding the publication splits on songs other than Jordan's, and that without this information Sony could not determine which parties were to receive royalty payments.[28]  By way of example, on August 21, 2002, Harry Marquez, an interim copyright coordinator at Sony, faxed a letter to Ron Wilson at SRI requesting split confirmation for the *Undaground Legend* album.  Marquez indicated that SRI needed to provide this information before Sony could finalize its

---

[26]     Plaintiff's Response [Doc. # 84], at 14.

[27]     Publication splits refer to the percentage of the copyright each songwriter or contributor will own in each song.

[28]     *See* Plaintiff's Response [Doc. # 84], Exh. 22: "Marquez—Request for Information," at BMG-019.

figures for calculating royalties.[29]   Also, a January 21, 2004, email from John Sadocaha at Sony to Michelle Bayer, one of Jordan's representatives, revealed that the mechanicals on the album were still not settled.[30]   Sadocaha continued that "[Sony] must await notification from Sucka Free [sic] Records and Lil Flip as they're ultimately responsible to work out the conflicting pub splits, which include [Jordan's] interests."[31]

Jordan also directs the Court to a Sony Copyright Clearance Report for the *Undaground Legend* album which indicated that the Songs were "cleared" and "splits firm."[32]   Jordan construes this document to mean that Sony did not contest its obligation to pay Jordan 50% of the royalties on the Songs and that the document implies that some royalties were due him.   Jordan's construction materially overstates the import of this evidence.   There is no evidence that the phrase "splits firm" meant anything other than that there was a no dispute among the various artists, producers, and SRI as to percentages owned on identified songs.   Jordan also presents no

---

[29]     *Id.*

[30]     Plaintiff's Response [Doc. # 84], Exh. 26: "Emails of Correspondence," at 9. "Mechanicals" refer to the mechanical royalties that record companies must pay a music publisher for licenses to use their compositions on a record.   *See* Jill A. Michael, *Music Copublishing and the Mysterious "Writer's Share*," 20 ENT. & SPORTS L. 13, 14 (2002).

[31]     Plaintiff's Response [Doc. # 84], Exh. 26: "Emails of Correspondence," at 9.

[32]     *Id.* Exh. 24: "Copyright Clearance Report," at 1–2.

evidence that notations on the report that the Songs were "cleared" refers to any discrete obligation for Sony to pay Jordan a sum certain as a royalty or to pay him outside his contract with SRI.  In context and in light of all the other communications between the parties, the report establishes that Sony accepted as final the reported split of royalties on Jordan's Songs.  There is no commitment in this document, however, to pay any sum of money as a royalty to Jordan.  Indeed, there is no evidence that Sony undertook an obligation (independent of the ministerial distribution function in the so-called "Payment Authorization Contract") to pay Jordan royalties.

In summary, the communications on which Jordan relies indicate only that Sony sought to determine from SRI and Jordan the final publication splits among the writers and producers so that, thereafter, Sony could calculate royalties payable on each song under Weston or SRI's contracts with the composers or artists.  Jordan's characterization of the communications between Jordan and Sony are merely unsupported argument.  There is no evidence of any meeting of the minds or implied contract that Sony, independent of SRI's rights and obligations, owed Jordan royalty payments.  Sony is entitled to summary judgment on this theory of relief.

## B.    <u>Copyright Infringement Claim</u>

Jordan alleges that Sony's use of the Songs was unauthorized and constitutes copyright infringement.  Specifically, Jordan alleges that Sony failed to obtain a

license agreement from Jordan, and therefore Sony's use and distribution of the Songs on the referenced albums was copyright infringement.

### 1. Statute of Limitations

As a threshold matter, Sony claims that Jordan's copyright infringement claim is barred by limitations.  The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  The question, therefore, is when Jordan's claim accrued.  Sony argues that the claim accrued no later than August 2002 when the *Undaground Legend* album was released, and therefore, Jordan is barred from recovery for any claim of copyright infringement.  Jordan argues that he is entitled to recover for infringement occurring *within* the three years prior to filing suit, even though the initial act of infringement may have occurred more than three years prior to filing suit.  Jordan also argues that the statute of limitations should be equitably tolled in light of Sony's actions and representations, which Jordan has characterized as "lulling assurances."[33]

### a. Application of § 507(b)

Sony contends that Jordan's claim could have accrued no later than August 2002 when the *Undaground Legend* album was released.  A cause of action for copyright infringement accrues when a party "has knowledge of the violation or notice

---

[33]      Plaintiff's Response [Doc. # 84], at 21.

of facts that, in the exercise of due diligence, would have led to such knowledge.  *PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 105 F.3d 656, 656 (5th Cir. 1996) (unpublished); *see also Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) ("A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised."); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (holding a cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge).  Sony argues that by August 2002, Jordan had knowledge of the infringing acts, if there were any, because he was aware of the album's release.  Jordan does not dispute that he had knowledge of the release and does not appear to challenge Sony's assertion that the claim initially accrued in August 2002, more than three years before he commenced this case.  Rather, Jordan focuses solely on the theory that he can recover for infringement that occurred within the three year period prior to filing this suit.

There are two conflicting Fifth Circuit panel decisions regarding when copyright infringement claim are barred by § 507(b).  Jordan asks the Court to follow *Makedwde Publishing Co. v. Johnson*, 37 F.3d 180 (5th Cir. 1994), and hold that regardless of when the initial infringement occurred, a defendant is liable for acts of infringement committed within three years prior to a plaintiff bringing suit.  Sony, however, contends that the holding in *Daboub v. Gibbons*, 42 F.3d 285 (5th Cir. 1995), controls and completely bars Jordan's recovery.  This issue has been ably

addressed by the Honorable David Hittner in *King Empire, Inc. v. Milan Courtyard Homes, Ltd.*, 173 F.Supp.2d 649 (S.D. Tex. 2001):

> Application of *Makedwde* allows Plaintiffs to recover for infringing acts occurring within the three years before the commencement of the action. See *Makedwde*, 37 F.3d at 182. However, Defendants argue that under *Daboub*, the limitation period runs from the date of notice of the infringement and that repeated acts of the same infringement do not create separate bases of liability and recovery. Defendants assert that *Daboub* "implicitly overruled *Makedwde* to the extent any liability could be predicated on acts occurring within three years prior to suit." To that end, this Court is faced with conflicting rulings from two Fifth Circuit decisions.
>
> It is well established that one Fifth Circuit panel cannot overrule the decision of another panel; panel decisions may be overruled only by the Fifth Circuit sitting *en banc* or by a subsequent decision of the Supreme Court. *E.g., Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997); *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1400 n.4 (5th Cir.1995) (J. Smith, concurring in part and dissenting in part); *FDIC v. Dawson*, 4 F.3d 1303, 1307 (5th Cir.1993); *Burlington N.R.R. v. Brotherhood of Maintenance of Way Employees*, 961 F.2d 86, 89 (5th Cir.1992); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991).
>
> The rule that one panel cannot overrule another panel is usually cited in the context of a discussion in which a party asks the court to "reexamine" an earlier Fifth Circuit decision or when a later panel is in disagreement with an earlier decision. However, it does not appear that the differing results in *Makedwde* and *Daboub* as to appropriate application of the limitations period are due to disagreement between the panels or even contrary interpretation of the applicable precedent. *Daboub* was decided less than three months after *Makedwde*. Although the court in *Daboub* discussed and rejected the continuing tort theory, it did so without analysis of *Makedwde*, the seminal cases in this area, or the split among the circuits. Judge Smith of the Fifth Circuit has said:

> [O]ur rule of orderliness comes into play when two panels
> become "ships passing in the night."  A subsequent panel
> may be unaware of an earlier holding and, consequently,
> may reach a contrary result.  No interpretation is involved,
> as the later panel makes no mention of the earlier case.  In
> such an instance, we can easily say that the later opinion is
> a nullity; any other rule would invite judicial chaos.

*Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386,
1400 n. 4 (5th Cir.1995) (J. Smith, concurring in part and dissenting in
part).

      In light of the foregoing, *Makedwde* is the controlling precedent
before the Court.  Defendants are liable for acts of infringement, if any,
committed within the three-year period prior to the filing of this lawsuit.

The Court adopts Judge Hittner's analysis.  *Makedwde* is not only the first Fifth

Circuit panel opinion, and thus controlling authority, it is the more well founded view.

Moreover, for the "continuing tort" analysis, the *Daboub* opinion focused on the state

law and tort-like causes of action, as argued by the parties.  There was no analysis of

copyright law or the authorities discussed in some detail by the *Makedwde* court.

Jordan first asserted a copyright infringement claim in his Amended Complaint

filed on January 18, 2008.  Section 507(b) bars recovery of any damages for claims

that accrued prior to January 18, 2005, absent equitable tolling.  The Court holds that

limitations does not bar Jordan's claims against Sony for acts of infringement, if any,

committed on or after January 18, 2005.  Because the record contains evidence of

sales of the accused albums after January 17, 2005,[34] the Court will reach the issue of

---

[34]     This fact distinguishes this case from the decision by the Honorable Keith Ellison in
(continued...)

whether Jordan has raised a genuine fact issue on the copyright infringement claim as to the post January 17, 2005 sales.

### b.    Equitable Tolling

Before turning to the copyright claims on their merits, the Court addresses a second limitations issue: Whether there is equitable tolling of Jordan's claim for infringement prior to January 18, 2005.  Jordan may recover for infringement prior to January 18, 2005, only if he can show the limitations period should be tolled for some equitable reason.  *See Makedwde*, 37 F.3d at 183 n.4 (citing *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971)).  Jordan argues the limitations period should be equitably tolled because Sony lulled him into delaying suit until a date when Sony could raise a limitations defense.  Jordan broadly alleges that in response to his inquiries, Sony "indicated that there was no challenge to [Jordan's] rights and [Jordan] would be paid by Sony BMG," and that these indications "combined with [Sony's] initial recognition of ownership on the album cover, lulled [Jordan] into believing there was no need to commence the present litigation upon the album release date."[35]

---

[34]    (...continued)
a related matter entitled *Joseph Howard, Jr. p/k/a "Joe Traxx" v. Sony BMG Music Entm't, et al.*, granting summary judgment to Sony.  2007 WL 2537865 (S.D. Tex., Aug. 31, 2007), *aff'd*, 2008 WL 4302220 (5th Cir. 2008).

[35]    Plaintiff's Response [Doc. # 84], at 21.

To be entitled to equitable tolling, Jordan must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, __, 127 S.Ct. 1079, 1085 (2007); *see also Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007). Equitable tolling is only appropriate if the defendant took affirmative steps to lull the plaintiff into inaction and the plaintiff actually and reasonably relied on the defendant's conduct or representations. *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006).

As discussed above in the analysis of Jordan's implied contract claim, Jordan has failed to produce evidence that Sony ever informed Jordan that Sony would pay him a specific royalty owed by SRI or sums somehow owed by Sony different from those due under his agreement with SRI. Only reliance that is reasonable will suffice for equitable tolling. The Court concludes as a matter of law that Jordan's interpretation of Sony's written and oral statements is not reasonable and thus Jordan's reliance on those statements is legally insufficient.

Moreover, Jordan has not demonstrated that he pursued his rights with sufficient diligence to warrant equitable tolling. Jordan was well aware that he had not been paid any royalties, other than the initial advance, at any time after the *Undaground Legend* album was released. Yet Jordan chose not to bring suit until approximately three and a half years after that release. Moreover, Jordan did not

assert a copyright infringement claim until more than five and a half years after the release. Jordan's unsupported argument that he was "strung along" by Sony's assurances is factually and legally insufficient to satisfy his due diligence burden. "[D]ue diligence is not satisfied by passive reliance upon an allegedly deceptive statement." *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 467 (S.D.N.Y. 1999).

Jordan has failed to demonstrate that the statute of limitations should be equitably tolled by Sony's conduct. Therefore, the only issue before the Court is whether Jordan has established a genuine fact issue that Sony engaged in copyright infringement on or after January 18, 2005.

### 2. Copyright Infringement

Jordan alleges that Sony's failure to obtain a license agreement from him means that Sony's use and distribution of the Songs constitutes copyright infringement. To establish a claim of copyright infringement, a plaintiff must prove that he owned a valid copyright and that the defendant impermissibly copied or otherwise infringed upon the copyright. *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004); *Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 500 (5th Cir. 1998).

### a. Ownership of Valid Copyright of the Underlying Musical Compositions

Under the Copyright Act, sound recordings (in this case, the fixation of the combined music and lyrics) and the underlying musical compositions are separate works with distinct copyrights.  17 U.S.C. §§ 102(a)(2), (7).  Jordan asserts that he continues to own a valid copyright in the underlying musical compositions of the work—that is, the melodies.  Jordan presents evidence that he holds a valid certificate of registration, number PAu3-123-432,[36] from the Copyright Office for the underlying musical composition.  A certificate of registration constitutes *prima facie* evidence of the validity of a copyright.  *Id.* § 410(c).  Sony has not rebutted the presumption of validity.

Furthermore, Jordan has established a genuine fact issue that he never transferred his rights in the underlying musical compositions to Weston or SRI.  The SRI/Jordan Production Services Agreement makes no reference to Jordan's transfer of his copyright in the underlying musical compositions in issue.  Furthermore, Terry Hobbs, the president of SRI when the *Undaground Legend* album was released, testified that the "records at [SRI] do not show that any copyright assignment or transfer document (or Work Made for Hire agreement) was executed with Mr. Jordan relating to his original or registered copyright rights or ownership rights to the melodies or sound recordings used on songs placed on [the *Undaground Legend*

---

[36]   Plaintiff's Response [Doc. # 84], Exh. 13: "Certificate of Registration for Kenoe Collection of 2001."

album or the *7-1-3 Album*]."[37]   Weston's testimony is not inconsistent.   Weston

testified that Jordan gave him a CD that had some beats on it—here, the parties agree,

the melody—and Weston rapped over these beats.[38]   Jordan did not come into the

studio and start playing an instrument, but rather presented Weston pre-recorded

beats.[39]   Therefore, the Court concludes that Sony has not produced evidence to

dispute that Jordan holds a valid copyright in each of the three underlying musical

compositions.

### b.   Infringement   Claim   on   Underlying   Musical   Compositions

The Copyright Act grants the owner of a copyright various exclusive rights,

including *inter alia* the right to reproduce the work in phonorecords and to prepare

derivative works based on the copyrighted work.   *Id.* § 106.   Unauthorized use of

copyrighted material inconsistent with these exclusive rights constitutes impermissible

infringement.   *Id.* § 501(a).

Jordan contends that he was the sole owner of the copyright in the underlying

musical compositions, and that it was the underlying musical compositions that Sony

infringed.   As discussed previously, Sony has not produced evidence to dispute that

---

[37]      Plaintiff's Response [Doc. # 84], Exh. 4: "Declaration of Terry L. Hobbs," at 2.

[38]      Plaintiff's Response [Doc. # 84], Exh. 31: "Excerpts of Weston Deposition," at 113.

[39]      *Id.* at 126.

Jordan holds a copyright in each of the three underlying musical compositions.  This copyright, however,  is independent from the copyright in the final sound recordings of the Songs.  Jordan contends that because Weston had no rights in the underlying musical compositions, he could not have transferred or licensed to Sony any rights in the underlying musical compositions.  Therefore, Jordan argues, Sony's license defense fails with respect to the underlying musical compositions and Sony's use constitutes copyright infringement.

Sony contends that there was no impermissible infringement because Weston, Jordan's joint author and co-owner of the Songs,[40] granted Sony an express license to use those works.  Because joint owners are each entitled to equal undivided interest in the whole work, *see Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998), a valid license to Sony granted by Weston forecloses recovery by Jordan for copyright infringement of the Songs.  Jordan replies that Weston was not a joint author of the underlying musical compositions, and therefore could not have granted a license that included use of those compositions.  The argument is unavailing.

Weston transferred his ownership rights in the final sound recordings, the Songs, to SRI.[41]  SRI then granted a valid license to Sony for use of those works.  The

---

[40]     17 U.S.C. § 201(a) provides that the authors of a joint work are co-owners of copyright in the work.

[41]     Plaintiff's Response [Doc. # 84], Exh. 9: "Weston/SRI Agreement," ¶ 7.01 ("Artist
(continued...)

Sony/SRI Distribution Agreement provides that "[SRI] grant[s] to [Sony] and [Sony's] Licensees an irrevocable license, under copyright, to reproduce each Controlled Composition on Records of master Recordings [*i.e.*, the Songs] hereunder other than Audiovisual Records, and to distribute those Records in the United States and Canada."[42]  Thus, SRI, as it was entitled to do as a joint owner, granted Sony a clear authorization to distribute the final sound recordings of the Songs.  "[A]n authorization to the defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 224 (5th Cir. 1999) (quoting MELVIN B. NIMMER & DAVID NIMMER, 1 NIMMER ON COPYRIGHT § 6.10 (1999)).  Jordan apparently recognizes Sony's right to distribute the Songs.  His claim for infringement here is solely related to the underlying musical compositions.  Jordan's claim fails.  He has not directed the Court to any evidence that Sony made any use of the underlying musical compositions that was distinct from Sony's validly licensed reproduction and distribution of the final sound recordings of the Songs.  Without such evidence, the claim fails as a matter of law. *See, e.g.*, *Bridgeport Music, Inc. v. DJ Yella Muzick*, 99 F. App'x 686, 692 (6th Cir. 2004) (unpublished) (finding that even if a license was only granted for use of the

---

41      (...continued)
        Agreement").

42      Sony/SRI Distribution Agreement [Doc. # 84, Exh. 2], ¶ 13.01

sound recording, an infringement claim by a music publisher with a copyright interest in the underlying musical composition was barred by the license because the infringing acts on which the plaintiff rested the claim and the only evidence of infringing acts in the record were the release, distribution, and sale of the sound recordings).  Because Jordan has failed to raise a genuine fact issue that Sony made unauthorized use of the underlying musical compositions, Sony is entitled to summary judgment on Jordan's copyright infringement claim.

### C.   Copyright Co-Ownership and Accounting Claims on the Songs

Jordan alleges that he and Weston are joint authors of the Songs and, by virtue of Weston's transfer of his own rights to the lyrical content of the Songs to Sony, that Jordan derivatively is a co-owner with Sony of the final sound recordings of the Songs.  Jordan requests a declaratory judgment establishing this co-ownership of the master recordings of the Songs and an accounting by Sony for income resulting from the use of the Songs.  Sony contends that it did not receive from SRI a transfer of Weston's ownership rights to the Songs; rather, Sony contends SRI granted it a license to use the Songs to press albums or CDs and to distribute the final works.  Sony reasons that Jordan's claim fails because a claim of joint authorship lies only against a co-author, and Sony is not a co-author of the Songs.

The Copyright Act defines a "joint work" as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or

interdependent parts of a unitary whole." 17 U.S.C. § 101. The authors of a joint work are co-owners of copyright in the work. *Id.* § 201(a). Authors of a joint work are initial co-owners of the copyright in the work, and are each entitled to equal undivided interest in the whole work. *See Thomson*, 147 F.3d at 199. A co-owner of a copyright must account to other co-owners for any profits earned from licensing or use of that copyright. *Quintanilla*, 139 F.3d at 498.

Jordan's Original and Amended Complaints assert a joint authorship, and thus a joint ownership, interest with Weston in the Songs. Sony agrees that Jordan and Weston are joint authors. The dispute here is whether Jordan is a co-owner of the Songs with Sony. As discussed previously, Weston transferred his ownership rights in the sound recordings to SRI.[43] SRI then granted a valid license to Sony for use of the final sound recordings. The Sony/SRI Distribution Agreement provides that "[SRI] grant[s] to [Sony] and [Sony's] Licensees an irrevocable license, under copyright, to reproduce each Controlled Composition on Records of Master Recordings hereunder other than Audiovisual Records, and to distribute those Records in the United States and Canada."[44] This license does not make Sony a co-owner of the Songs with Jordan.

---

[43]     Artist Agreement [Doc. # 84, Exh. 9], ¶ 7.01.

[44]     Sony/SRI Distribution Agreement [Doc. # 84, Exh. 2], ¶ 13.01

Jordan, however, directs the Court to paragraph 7.01 of the Sony/SRI Distribution Agreement, which provides that:

> Each Recording made or furnished to [Sony] by [SRI] or an Artist either under [the Sony/SRI Distribution Agreement] or during the Term or during the applicable Artist Exclusivity Period (a "Master Recording"), from the Inception of Recording, will be considered a work made for hire for [Sony]; if any such Master Recording is determined not to be a work made for hire for [Sony], it will be deemed transferred to [Sony] by this agreement, together with all rights in it.[45]

Jordan contends that paragraph 7.01 is a full assignment of SRI's rights in the lyrical content of the Songs to Sony. Therefore, Sony would be a joint owner and Jordan could bring a claim for an accounting by Sony for income resulting from the use of the Songs. Sony does not address Jordan's argument. The Court concludes, on the basis of paragraph 7.01, that Jordan has raised a genuine fact issue that SRI fully transferred to Sony all SRI's ownership rights (including any authorship rights it held), and not merely granted a license, with respect to the master recordings, which include the Songs. There thus is a fact issue whether Sony was a co-owner of the Songs with Jordan.

However, Sony also contends that Jordan's joint ownership claim is barred by the statute of limitations. Section 507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced

---

[45]   *Id.* ¶ 7.01. A "Recording" is defined in the agreement as "every recording of sound." *Id.* ¶ 16.25.

within three years after the claim accrued."  Sony argues that Jordan's joint-authorship claim accrued in August 2002 upon the release of the *Undaground Legend* album, and is thus time barred.  Jordan's responses are addressed below.

### 1.     Application of Texas State Law Statute of Limitations

Jordan directs the Court to *Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996), for the proposition that the three-year statute of limitations under the Copyright Act does not apply to an action by a co-owner for an accounting, and that the state law prescriptive periods control.  Jordan's reliance is misplaced.  *Goodman* is factually distinguishable.  In that case, the plaintiff had obtained in a prior, timely-asserted action a jury verdict that he was a co-owner of the copyright of the song in question.  Because the *Goodman* plaintiff timely asserted a claim of co-ownership, the court in the suit for an accounting held that "[t]he applicability of federal law ends with that determination."  *Id.*  In the case at bar, there has been no prior determination of Jordan's alleged co-ownership; this Court is being asked to make that ruling.  Determination of whether Jordan is a co-owner requires application of the ownership and transfer provisions of the Copyright Act, and therefore the limitations period of the Act.  *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.B.B.H. & Go. K.G.*, 510 F.3d 77, 87–88 (1st Cir. 2007).[46]

---

[46]     This Court adopts the reasoning of the Court of Appeals for the First Circuit in *Cambridge Literary Properties*.  The First Circuit stated that *Goodman* is "entirely (continued...)

Jordan's reading of *Goodman* also is against the strong weight of authority. The First, Second, Sixth, and Ninth Circuit have ruled that state law claims dependent on a copyright claim, such as an action for accounting, are controlled by the Copyright Act's three-year statute of limitations. *See Ritchie v. Williams*, 395 F.3d 283, 288–89 (6th Cir. 2005) (claims for a declaration of co-ownership time barred three years after accrual); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.B.B.H. & Go. K.G.*, 510 F.3d 77 (1st Cir. 2007) (same)*; Merchant*, 92 F.3d at 56 (same); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) (same); *see also Johnson v. Berry*, 228 F.Supp.2d 1071, 1077 (E.D. Mo. 2002) ("having determined that plaintiff's claim of co-ownership of copyright is barred as untimely, the derivative claim to an accounting of profits as co-owner is also barred"); *Weber v. Geffen Records, Inc.* 63 F.Supp.2d 458, 464 (S.D.N.Y. 1999) ("[P]laintiff cannot state a claim with any non-copyright cause of action that depends on a copyright claim that would be time-barred under the Copyright Act."); *Margo v. Weiss*, 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998) (Mukasey, J.) ("It would be anomalous to hold that plaintiffs are precluded

---

[46]   (...continued)
consistent with the prevailing view that disputed claims about whether there is co-authorship required application of the Copyright Act and the Act's statute of limitations. The portion of the opinion that applied state law is inapposite here, because it dealt with accounting issues that only arose following a proper determination of copyright ownership under the Copyright Act." *Id.*

from seeking a declaration of co-authorship and, at the same time, that they are permitted to claim a breach of duties that co-authorship might impose.").

The Court concludes that Jordan's joint ownership claim is subject to the Copyright Act's three-year statute of limitations. Therefore, the Court must determine when Jordan's co-ownership claim accrued.

### 2.    Accrual of Jordan's Co-Ownership Claim

Jordan argues that his cause of action for a declaration of co-ownership did not accrue until June 9, 2004, when Sony "took the position, for the first time, that [Jordan] did not have an ownership interest in the subject album and [Sony] refused to pay him any royalties due and owing to him."[47]  Under this theory, Jordan's claim would be timely because the Original Complaint included a co-ownership claim and was filed on May 16, 2006, less than three years after the date Jordan alleges Sony repudiated his ownership interest.

Jordan urges the Court to apply the test set forth by the Sixth and Ninth Circuits that "claims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation."  *Zuill,* 80 F.3d at 1369; *see also Ritchie v. Williams*, 395 F.3d 283, 289 n.5 (6th Cir. 2005) (citing *Aalmuhammed v. Lee*, 2002 F.3d 1227, 1230–31 (9th Cir. 2000); *Zuill*, 80 F.3d at 1369).  However, the

---

[47]      Plaintiff's Response [Doc. # 84], at 27.

Fifth Circuit has adopted a different standard which is binding on the Court.  The Fifth Circuit rule is that co-ownership declaratory judgment rights accrue when an alleged co-owner "knew or had reason to know of the injury upon which the claim is based." *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006) (citing *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 163–65 (2d Cir. 2003)).[48]

Sony argues that "[g]iving Jordan every benefit of the doubt, he knew or should have known of his claimed interest in [the Songs] absolutely no later than August 2002, the date that *Undaground Legend*, the album containing these songs, was publicly released."[49]  "A co-author knows that he or she jointly created a work from the moment of its creation."  *Merchant*, 92 F.3d at 56.  However, it does not logically follow that because Jordan knew of his claimed interest in August 2002 that he knew of the injury upon which his claim is based as of the same date.  The injury in Jordan's co-ownership claim is that Sony, an alleged co-owner, denied Jordan's co-ownership. Therefore, Jordan's co-ownership declaratory judgment rights accrued when Jordan

---

[48]    This test is also comparable to that in  the First, Second, and Seventh Circuits, *i.e.*, a claim accrues when a plaintiff "knows or has reason to know of the act which is the basis for the claim."  *Cambridge*, 510 F.3d at 88 (citing *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006)); *see also Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) ("the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights"); *Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000) (holding that the co-ownership claim accrued when the plaintiff knew of the alleged grounds for the ownership claim).

[49]    Defendant's Motion for Summary Judgment [Doc. # 72], at 14.

knew or had reason to know that Sony was asserting that it was the sole owner of the sound recordings of the Songs.

On September 25, 2002, Sony, through Loud Records, LLC, registered the sound recordings contained on the *Undaground Legend* album with the Copyright Office.[50]  It is clearly indicated on the certificate of registration that Loud Records, LLC, is the sole "Copyright Claimant."  As argued by Jordan for a different point,[51] the Copyright Office defines the Claimant as "the author of the work or a person or organization that has obtained ownership of all the rights under the copyright initially belonging to the author."[52]  This document, however, defeats Jordan's claim on limitations grounds.  Jordan plainly was not listed as a "Copyright Claimant" on the certificate of registration; therefore, once the certificate was filed, Jordan was on constructive notice, as a matter of law, of Sony's public claim of sole ownership of the Songs.  *See* 17 U.S.C. § 205(c) (recordation of a document in the Copyright Office "gives all persons constructive notice of the facts stated in the recorded document"); *see also Latin American Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 40 (1st Cir. 2007); *Johnson v. Jones*, 149

---

[50]     Plaintiff's Response [Doc. # 84], Exh. 11: "Certificate of Registration."

[51]     Jordan directed the Court to this document in support of his argument that Sony is a properly named party to the claim for an accounting as a co-owner.

[52]     Plaintiff's Response [Doc. # 84], at 23 (emphasis in original).

F.3d 494, 505 (6th Cir. 1998) ("Constructive notice of a valid copyright is presumed upon registration."); *Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs.*, 119 F.3d 55, 66 (1st Cir. 1997) ("A copyright registration certificate issued by and filed with the Copyright Office thus serves to put the world on constructive notice as to the ownership of the copyright and of the facts stated in the registration certificate."). *But see Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir. 2004) (holding that in the context of a compilation, registration of a copyright in the compilation does not provide constructive notice of a claim of ownership). Jordan's claim accordingly accrued on September 25, 2002. Jordan first asserted a co-ownership claim in the Original Complaint on May 16, 2006, more than three years after the claim accrued. Absent equitable tolling, § 507(b) bars recovery on Jordan's co-ownership and accounting claims.

### 3.    Equitable Tolling

Jordan argues that the three-year statute of limitations should be equitably tolled. Equitable tolling is applicable to claims for a declaration of co-ownership. *See, e.g., Merchant*, 92 F.3d at 56 (applying equitable tolling to declaration of co-ownership claim). For the reasons discussed above with respect to the lack of adequate proof to support equitable tolling on Jordan's copyright infringement claim, the Court concludes that Jordan has failed to demonstrate a genuine fact issue that the statute of limitations should be equitably tolled for his co-ownership claim.

### 4.      Conclusion

Jordan's co-ownership and associated accounting claims are barred by the Copyright Act's three-year statute of limitations.   Therefore, Sony is entitled to summary judgment dismissing those claims.

### D.      <u>Fraud Claim</u>

Jordan alleges that Sony "made material false representations to [Jordan] by promising that he would eventually be paid not only according to the terms of his Production Services Agreement, but would also be paid mechanical royalties as a joint author/owner of the [Songs]."[53] Jordan further alleges that Sony made these repeated assurances of payment to delay Jordan from filing legal action until the statute of limitations would limit or preclude Jordan's recovery.[54]   Under Texas law, a fraud claim requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Eng'r and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) (citing *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)).

---

[53]      Plaintiff's First Amended Complaint [Doc. # 53], ¶ 70.

[54]      *Id.* ¶ 73.

Jordan does not assert a fraud in the inducement claim, stating that "Plaintiff's claim of fraud against Defendant Sony BMG is based upon a pattern of fraud occurring <u>after</u> the execution of the contracts and the initial advance payment to the Plaintiff."[55]  To the extent Jordan is arguing for fraud in contract performance, this claim fails as a matter of law.   A "plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."  *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192 S.W.3d 120, 126-27 (Tex.App.—Houston [14th Dist.] 2006), no pet.).  *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. V. Care Flight Air Ambulance Service, Inc.*, 18 F.3D 323, 326 (5th Cir. 1994) ("Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss."). In any event, as set forth above in the analysis of Jordan's implied contract claim, at no point in the course of communicating with Jordan did Sony represent that it owed Jordan any royalty payment.   Sony repeatedly reiterated that Sony could not make royalty calculations (which were being done on behalf of SRI) until SRI had finalized the publication splits.   Jordan has failed to raise a genuine fact issue that Sony made

---

[55]      Plaintiff's Response [Doc. # 84], at 28 (emphasis in original).

a material misrepresentation, an essential element to a fraud claim.  Sony is entitled to summary judgment on the fraud claim.

### E.   <u>Negligent Misrepresentation Claim</u>

Sony argues that Jordan's negligent misrepresentation claim fails because a promise to do or not do something in the future cannot support a claim of negligent misrepresentation.   Texas has adopted the tort of negligent misrepresentation as defined by the Restatement (Second) of Torts § 552.  *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).  The elements of a claim for negligent misrepresentation are (1) the representation is made by a defendant in the course of his business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.  *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 438 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  Importantly, the type of "false information" must be a misstatement of existing fact, not a promise of future conduct.  *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

For the same reasons that Jordan's fraud claim is insufficient, his misrepresentation claim also fails. Jordan has not raised a genuine fact issue that Sony made any representation that it owed Jordan any payment. Without such a representation, Jordan's negligent misrepresentation claim fails as a matter of law. Sony is entitled to summary judgment on this claim.

### F.   Texas Theft Liability Act Claim

Jordan alleges that Sony unlawfully acquired his production services in violation of the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. § 134.001, *et seq.* ("TTLA"). Jordan characterizes this claim as being "based on [Jordan] being a service provider, the Defendant unlawfully appropriating, securing or stealing [Jordan's] services, the Defendants' [sic] having an intention to avoid payment for the service, and [Jordan] sustaining damages as a result of the theft."[56]

Sony's Motion asserts that Jordan can produce no evidence that Sony improperly appropriated anything from Jordan.[57] This satisfies Sony's summary judgment burden to identify areas essential to Jordan's claim where there is an absence of genuine issues of material fact. *Reyna*, 401 F.3d at 349. Jordan has failed to meet his burden to go beyond the pleadings and designate specific facts shown by admissible evidence that there is a genuine issue of material fact on the TTLA claim.

---

[56]   Plaintiff's Response [Doc. # 84], at 31.

[57]   Defendant's Motion for Summary Judgment [Doc. # 72], at 20.

*Littlefield*, 268 F.3d at 282.  Jordan's Response with respect to the TTLA claim is exclusively directed towards Sony's contention that the TTLA claim is preempted by the Copyright Act.  Jordan merely states in passing that "[t]here are non-copyright related facts and arguments that support the Plaintiff's state law claim."[58]  This conclusory assertion is patently insufficient to meet Jordan's summary judgment burden on the appropriation element of this cause of action.

Because Jordan has failed to meet his summary judgment burden on the threshold issue, the Court does not decide whether the TTLA is preempted by the Copyright Act or whether the claim, if not preempted, would be barred by the applicable statute of limitations.  Sony is entitled to summary judgment on Jordan's TTLA claim.

## IV.   **CONCLUSION**

For all the foregoing reasons, Jordan has failed to establish a genuine issue of material fact for trial on any of his claims.  It is therefore

**ORDERED** that Sony's Motion for Summary Judgment [Doc. # 72] is **GRANTED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 25<u>th</u> day of **November, 2008**.

Nancy F. Atlas
United States District Judge

---

[58]    Plaintiff's Response [ Doc. # 84], at 31.